UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANTONIO MEDEROS,<br><br>    Petitioner,<br><br>v.<br><br>BRUCE CHADBOURNE, *et al.*,<br><br>    Respondents. | )<br>)<br>)   Civil Action No. 04-12598 GAO<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT
OF FEDERAL RESPONDENTS' MOTION TO DISMISS**

Antonio Mederos ("Mederos"), who is presently committed to the Massachusetts Treatment Center as a sexually dangerous person, has filed a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. 2241 ("Petition"), in which he seeks to remedy and enjoin what he asserts to be his "Unlawful detention by the Respondents." Specifically, Mederos complains that, although he was ordered removed from the United States by an Immigration Judge on July 25, 2001, he has not been taken into federal custody for purposes of removal, but rather continues to be committed to the Massachusetts Treatment Center. Mederos alleges that his continuing commitment and detention by the Commonwealth of Massachusetts violates his rights to procedural and substantive due process, and violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001). Mederos names both federal and state officials and entities as respondents.

This matter should be dismissed. *First*, this Court lacks jurisdiction to provide Mederos with the relief that he seeks -- an order directing that federal officials take him into custody. *Second,* because he is in the custody of the Commonwealth of Massachusetts, rather than the federal

government, Mederos' invocation of Zadvydas and § 1231(a)(6) is misplaced. *Third*, liberally construed as a mandamus action, any claim Mederos might have fails as there is no "clear and nondiscretionary duty" that he be taken into federal custody. *Fourth*, and lastly, Mederos has failed to state a cognizable claim for monetary damages.

## BACKGROUND

1. **Entry into the United States and Order of Removal**: Mederos arrived in the United States on July 1, 1980, as part of the "Mariel boatlift." Petition ¶ 11. See Arango Marquez v. I.N.S., 346 F.3d 892, 895 (9th Cir. 2003) (explaining that native Cubans who arrived in the United States via the Mariel harbor in Cuba from April 15, 1980 to October 20, 1980, became known as "Mariel Cuban"). Mederos and other Mariel Cubans were conditionally paroled into the United States under § 212(d)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5)(A). See generally Clark v. Suarez Martinez, 125 S. Ct. 716, 720 (2005); Rosales-Garcia v. Holland, 322 F.3d 386, 390-91 (6th Cir. 2003).

On January 25, 2001, Mederos was ordered removed from the United States by an Immigration Judge. Petition ¶¶ 1, 12.

2. **Civil Commitment of Sexually Dangerous Persons**: Finding "the danger of recidivism posed by sex offenders * * * to be grave and that the protection of the public from these sex offenders is of paramount interest to the government," the Massachusetts Legislature in 1999 enacted a mechanism, codified at Mass. G.L. c. 123A, to provide for the civil commitment of individuals convicted of sexual offenses who are found to be sexually dangerous persons. St. 1999, c. 74, § 1. Under that scheme, a sexually dangerous person is defined as "any person who has been * * * convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual

offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility." Mass. G.L. c. 123A, § 1.

3. **Mederos' Commitment as a Sexually Dangerous Person**: On December 19, 2002, the Commonwealth of Massachusetts filed a Petition for Commitment of Sexually Dangerous Person, seeking to have Mederos committed to the Massachusetts Treatment Center for an indeterminate period with a minimum of one day and a maximum of his natural life. See Petition ¶¶ 1; 13; Petition for Commitment of a Sexually Dangerous Person, Commonwealth v. Mederos, Superior Court Civil No. 02-5688-A (hereafter "Commitment Petition") (copy attached as Exhibit 1).[1]  The Commitment Petition alleged that Mederos was a sexually dangerous person based on the following facts:

- On September 18, 1989, Mederos was convicted of indecent assault and battery in Barnstable County, Massachusetts, and sentenced to a term of imprisonment of nine months. Petition ¶ 12; Commitment Petition at 4. The victim in that case was a female between the ages of fourteen and sixteen. See Commitment Petition at 4 & n.1.

- On October 29, 1992, Mederos was convicted and sentenced on three counts of indecent assault and battery on children under fourteen. Id. at 3. The victims in that case were three females of the ages of eight, ten, and twelve. Id.. Mederos received separate two and one-half year sentences on two counts, and received a two and one-half year sentence that was suspended for a period of five years on the third count. Id.

---

[1] In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice" without converting the motion to dismiss into a motion for summary judgment. See In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). Accord Rodi v. Southern New England School of Law, 389 F.3d 5, 12 (1st Cir. 2004) ("In ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be it a trial or appellate court, must consider the complaint, documents annexed to it, and other materials fairly incorporated within it. * * * This sometimes includes documents referred to in the complaint but not annexed to it.") (internal citations omitted). The First Circuit also has recently reaffirmed that "'a court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment.'" Greene v. State of Rhode Island, No. 03-2670, 2005 WL 330615, slip op. at 8 (1st Cir. Feb. 11, 2005) (quoting Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000)).

- On February 29, 2000, Mederos admitted to sufficient facts of two counts of indecent assault and battery against the woman with whom he was living. Id. at 2. He was sentenced to concurrent sentences of one year each for each count. Id. at 3.

- On March 27, 2000, Mederos pled guilty to one count of indecent assault and battery, and one count of rape and abuse of a child under sixteen. Id. at 1. He was sentenced to a term of imprisonment of three years to three years and a day on the former count, and ten years probation to be served on and after his term of imprisonment on the latter count. Id. The victim in that case was Mederos' fourteen-year old son. Id. at 2.

- Mederos had refused to participate in the Department of Correction's Sex Offender Treatment Program. Id. at 5.

- A clinical and forensic psychologist, Barbara Quinones, had revised Mederos' records and found that they support a diagnosis of Personality Disorder Not Otherwise Specified and Pedophilia, Sexually Attracted to Both, Nonexclusive. Id. at 5. Dr. Quinones opined that, because of Mederos' personality disorder and mental abnormality, he was likely to commit sexual offenses if not confined to a secure facility. Id.

Probable cause to believe that Mederos was a sexually dangerous person was found on January 10, 2003. See Judgment and Order of Commitment, Commonwealth v. Mederos, Superior Court Civil No. 02-5688-A (hereafter "Judgment and Order of Commitment") (attached as Exhibit 2). The matter came on for a jury trial on October 7, 2003, and continued to October 15, 2003. Id. After a review of the testimony and consideration of the exhibits introduced at trial, the jury returned a finding that Mederos was a sexually dangerous person. Id.

Accordingly, on October 16, 2003, Mederos was ordered committed to the Massachusetts Treatment Center for an indeterminate period of a minimum of one day and a maximum of his natural life until discharged pursuant to the provisions of Mass. G.L. 123A. Id. Mederos remains in the custody of the Massachusetts Treatment Center pursuant to the Judgment and Order of Commitment. Petition ¶¶ 1, 13.

4. **Mederos' Habeas Petition**: On December 9, 2004, Mederos filed the instant petition, in which he seeks to remedy and enjoin what he asserts to be his "[u]nlawful detention by the Respondents." Petition at 1. Specifically, Mederos appears to complain that, although he was ordered removed from the United States by an Immigration Judge on July 25, 2001, he has not been taken into federal custody for purposes of removal by the Department of Homeland Security ("DHS"),[2] but rather remains in the custody of the Commonwealth of Massachusetts while being committed to the Massachusetts Treatment Center. Mederos alleges that his continuing commitment and detention by the Commonwealth of Massachusetts violates his rights to procedural and substantive due process, and violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in Zadvydas.

On December 17, 2004, this Court entered an Order ordering that the Federal Respondents file an answer or other responsive pleading within 60 days of receipt of the Order. On February 23, 2005, this Court granted the federal respondents' motion for an extension of time, up to and including February 25, 2005, in which to file a response to the petition.

## ARGUMENT

**I.    THIS COURT LACKS HABEAS JURISDICTION TO ORDER FEDERAL OFFICIALS TO TAKE MEDEROS INTO CUSTODY**

Mederos' petition is premised on two equally faulty assumptions: (1) that this Court has habeas jurisdiction to order the DHS to take him into custody to effect his removal from the United

---

[2] The authority exercised by the Attorney General and the Immigration and Naturalization Service ("INS") now resides in the Secretary of Homeland Security and the Bureau of Immigration and Customs Enforcement ("ICE") and Bureau of Citizenship and Immigration Services ("BCIS"). See Homeland Security Act of 2002, §§ 441(2), 442(a)(3), 451(b), 116 Stat. 2192, 6 U.S.C. §§ 251(2), 252(a)(3), 271(b) (2000 ed., Supp. II).

States, and (2) that the Supreme Court's decision in Zadvydas requires that he be released from *state* custody. As we now demonstrate, both assumptions are misplaced.

1. Liberally construing Mederos' petition, his primary complaint appears to be that the DHS has not taken him into custody to effect his removal. See Petition, Prayer for Relief ¶ 2 (requesting that this Court: "Grant the petitioner a Writ of habeas Corpus directing the Respondent's [sic] to immediately have the petitioner taken from the Nemansket Correctional Center and brought to the I.C.E. per-order of" the Immigration Judge). This Court lacks jurisdiction to entertain any such claim.

The Immigration and Naturalization Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, provides, in pertinent part, that:

> (g) EXCLUSIVE JURISDICTION
>
> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g). As the Supreme Court has explained, this provision "deprives the federal courts of jurisdiction" to review the government's decisions to "commence proceedings, adjudicate cases, or execute removal orders." Reno v. American Arab Anti-Discrimination Comm., 525 U.S. 471, 473, 482 (1999) ("AADC").

Mederos' request that the United States be compelled to take him into custody plainly falls within the federal government's discretion to "execute removal orders," and therefore is barred by § 1252(g). It is beyond peradventure that the exercise of discretion to execute a removal order

includes the decision whether and when to take any such action. As the Fifth Circuit has explained, "[t]he Congressional aim of § 1252(g) is to protect from judicial intervention the Attorney General's long-established discretion to decide ***whether and when*** to prosecute or adjudicate removal proceedings or to execute removal orders." Alvidres-Reyes v. Reno, 180 F.3d 199, 201 (5th Cir. 1999) (emphasis added). Indeed, in construing § 1252(g), the Supreme Court in AADC expressly noted that the exercise of discretion with respect to commencing removal proceedings, adjudicating cases, or executing removal orders, has traditionally included the decision not to pursue or prosecute the matter: "At each stage the Executive has discretion to abandon the endeavor, and at the time IIRIRA was enacted the INS had been engaging in a regular practice (which had come to be known as 'deferred action') of exercising that discretion for humanitarian reasons or simply for its own convenience." 525 U.S. at 484-85. Thus, to the extent Mederos is complaining that the United States has exercised its discretion not to effect his removal while he is committed to the Massachusetts Treatment Center, this Court lacks jurisdiction to entertain that claim. See Saint Fort v. Ashcroft, 329 F.3d 191, 198 (1st Cir. 2003) (§ 1252(g) has effect "of shielding certain of the Attorney General's exercises of discretion from judicial scrutiny.").

2. Mederos also asserts in his petition that his "continued detention by the Respondent's [sic] violates INA § 241(a)(6), as interpreted in Zadvydas." Petition ¶ 25. That claim, too, is unavailing. In Zadvydas, the Supreme Court considered whether § 1231(a)(6) of the INA "authorizes the Attorney General to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal," and held that, "[b]ased on our conclusion that indefinite detention of aliens in the former category would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation, the application of which

is subject to federal-court review." 533 U.S. at 682. That decision has no bearing on this case for the simple reason that Mederos is not being detained by the Attorney General or DHS pursuant to § 1231(a)(6), he is being detained by the Commonwealth of Massachusetts pursuant to G.L. c. 123A. Zadvydas, consequently, is not implicated.[3]

## II.   THE PETITION FAILS TO STATE A CLAIM FOR MANDAMUS

To the extent that Mederos' petition is liberally construed as seeking an order to compel DHS to take custody of the Petitioner under the mandamus statute, 28 U.S.C. § 1361, that claim similarly fails. "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'" Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)). Mederos can point to no "clear and nondiscretionary duty" that he be taken into federal custody. As we have shown above, the decision whether and when to take Mederos into custody falls squarely within the discretion of the Executive Branch. See AADC, 525 U.S. at 484-85; Alvidres-Reyes 180 F.3d at 201. Consequently, he necessarily cannot show that any duty allegedly owed him is "nondiscretionary," or that any such duty was "clear." See Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980) (per curiam) ("Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'").

Nor, even were he able to overcome this obstacle, can Mederos find any support in the removal statute. That statute provides that the United States "shall remove" an alien ordered removed within 90 days, see 8 U.S.C. § 1231(a)(1)(A), and further provides that the 90-day removal

---

[3] To the extent that the petition is construed as raising a Due Process challenge to Mederos' confinement to the Massachusetts Treatment Center the proper respondents would be the officials of the Commonwealth of Massachusetts, not the named federal respondents.

period "begins on the latest of the following: (i) The date the order of removal becomes administratively final.; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.; (iii) *If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement*." Id. § 1231(b)(1) (emphasis added). Here, because Mederos is indisputably "detained or confined" to the Massachusetts Treatment Center, the removal period, as defined by the statute, has not begun.

Accordingly, even if his petition were liberally construed as seeking mandamus relief, such relief is unavailable because Mederos has failed to show that there is a "clear, nondiscretionary duty" that he be taken into federal custody.

### III. MEDEROS HAS FAILED TO STATE A COGNIZABLE CLAIM, WITHIN THIS COURT'S JURISDICTION, FOR MONETARY DAMAGES

In his Prayer for Relief, Mederos seeks an injunction for $45,000,000.00 in monetary damages. Petition, Prayer for Relief ¶ 4.6. That claim is not cognizable in a habeas petition. See Preiser v. Rodriguez, 411 U.S. 475, 494 (1973) ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy"). Nor is it cognizable in a mandamus petition. See 28 U.S.C. §1361 (authorizing only suits "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"); Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 4 (1st Cir. 1989) (rejecting mandamus action where relief sought would require expenditure of federal funds).

To the extent Mederos is seeking monetary damages against the federal respondents, he may only do so pursuant to the Federal Tort Claims Act ("FTCA"), or against federal officials in their

individual capacity pursuant to Bivens v. Six Unkown Federal Narcotics Agents, 403 U.S. 388 (1971). This Court lacks jurisdiction to entertain either claim. With respect to any possible FTCA claim, any such claim must be asserted against the United States, which is not a named a party in this action. See 28 U .S.C. §§ 1346(b), 2674, 2479; Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000). Furthermore, a plaintiff must exhaust his administrative remedies with the applicable agency prior to bringing a the claim under the FTCA, see 28 U.S.C. § 2675(a), and Mederos has made no showing of any exhaustion of administrative remedies. Finally, Mederos fails to allege any actionable tort, *i.e.*, there is no actionable tort under Massachusetts law for failing to take an alien into federal custody.

Nor does the Petition set out the basis prerequisites of a Bivens claim. To begin with, Mederos has failed to indicate that any respondents are being sued in their individual capacities, and no personal service, a jurisdictional prerequisite to a Bivens claim, has been effected. Moreover, in assessing whether a Bivens violation has occurred, "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, * * * whether the right was clearly established * * *." Saucier v. Katz, 533 U.S. 194, 200 (2001). As the Mederos fails to traverse either obstacle (*i.e.*, there is no constitutional right to be *taken into* federal custody and a non-existent right cannot be "clearly established"), his petition fails to state any viable claims under Bivens.

**CONCLUSION**

For the reasons stated herein, the federal respondents respectfully request that this Court dismiss the petition with prejudice.

                                                          Respectfully submitted,

                                                          MICHAEL J. SULLIVAN
                                                          United States Attorney

                                                          /s/ Mark T. Quinlivan
                                                         MARK T. QUINLIVAN
                                                         Assistant U.S. Attorney
                                                          United States Attorney's Office
                                                          John Joseph Moakley U.S. Courthouse
                                                          1 Courthouse Way, Suite 9200
                                                          Boston, MA 02210
                                                          617-748-3606

Dated: February 25, 2005

**CERTIFICATE UNDER L.R. 7.1**

The federal respondents take the position that L.R. 7.1 requires "counsel" to confer and is not applicable where, as here, the opposing party is incarcerated and is appearing *pro se*. Alternatively, because the petitioner is currently confined in a correctional facility, counsel for the federal respondents respectfully requests leave to file this Motion without a 7.1 conference.

                                                          /s/ Mark T. Quinlivan
                                                          Mark T. Quinlivan
                                                          Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that copy of the foregoing was served by mail, on February 25, 2005, upon Antonio Mederos, Massachusetts Treatment Center, 30 Administration Road, Bridgewater, MA 02324,.

                                                          /s/ Mark T. Quinlivan
                                                          Mark T. Quinlivan
                                                          Assistant U.S. Attorney